UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DANIEL M. SHERWOOD,**

    Plaintiff,

v.                                      Case No. 8:10-cv-2583-T-TBM

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

    Defendant.
_____/

## **O R D E R**

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits and Supplemental Security Income payments. The Plaintiff urges that his case be reversed and remanded for further consideration because the ALJ erred in determining that Plaintiff could perform work given the ALJ's residual functional capacity finding that Plaintiff should have infrequent interaction with co-workers and supervisors. Plaintiff urges further error in the ALJ's credibility determination and in his failure to give proper weight to the opinions of Plaintiff's treating and examining physicians. For the reasons set out herein, the decision is reversed and remanded.

A.

Plaintiff was fifty-four years old at the time of his administrative hearing in May 2010. Plaintiff has a high school education and some college credits. His past relevant work was as a grocery store stock clerk and cashier. Plaintiff protectively filed for disability

benefits and Supplemental Security Income payments in March 2007, alleging disability as of April 25, 2002, by reason of depression and mental illness. The Plaintiff's applications were denied initially, on reconsideration, and in 2009 by decision of an Administrative Law Judge (ALJ). The Appeals Council granted review and remanded the case to the ALJ for further action. (R. 132-33).

On remand, a de novo hearing was conducted by the ALJ on May 14, 2010. Plaintiff, who was represented by counsel at the hearing, testified that he is unable to work because he has problems getting along with his co-workers and he would get in trouble with his supervisors for not obeying the rules. He last worked in 2007, but he got in trouble for taking a smoke break when he was supposed to be working. Sometimes he would follow rules at a job and other times he would not. He tended to not break the rules at jobs where he felt he was part of a team. Plaintiff sets unrealistic goals for himself and then gets upset when he does not meet them. He would expect to learn and become an expert at a new job within the first three weeks. When he was single, he also would expect to have a girlfriend within three weeks of starting a new job. He expects to be promoted quicker than anybody else. He always thought he would be an excellent employee, but recognizes that his job performance is only average or below average. Some jobs he likes better than others. If he connected with his co-workers and bosses, he would love the job and keep coming back. If he did not get along with the people he worked with, it was hard for him to keep a job.

Plaintiff testified that he had a history of exposing himself which stopped in 1976 when he got in trouble with the law because of it. He has a history of committing arson, but denies that he does that any more. He washes his hands excessively, at least fifteen to twenty times on a good day and fifty to sixty times on a bad day. If he is nervous or something is bothering him, it causes him to have a bad day. He has an obsession with college and graduate studies in that he obsessively researches college statistics to determine what it takes to get into a school, what courses a student can take at each school, and what graduate programs each school offers.

Plaintiff attended therapy, but would not always stick with it. If the therapist wanted him to do something that he did not really want to do, such as the 12-step program, or if topics were getting uncomfortable, he would drop the counseling. Plaintiff has been treating with Dr. Sadowsky since July 2009. Dr. Sadowsky gives him medication. Their therapy sessions are only ten to fifteen minutes which is why Plaintiff has not abandoned this therapy. Plaintiff testified that the medications keep him calm and mellow. He does not get too happy or too sad. It also helps him to sleep. Plaintiff used to have racing thoughts, but the medication seems to have helped with that as well.

Plaintiff testified that he goes into restaurants a couple times a week with an empty cup and take drinks from their drink machines. It causes problems because the workers will get mad at him and throw him out. He knows it is wrong, but he compares it to taking condiments in a restaurant. He gets angry when they tell him he cannot take the soda, but he

3

does not throw a fit. He usually leaves and does not come back into the restaurant for two to three months. He has been doing this for about two years.

Plaintiff has been married for ten years. He has a history of alcohol abuse, but claims he last had a drink five or six years ago. Since quitting work, he goes to the library five to six days per week for two hours at a time. He reads at home four to five hours a day. He helps out with some chores around the house such as vacuuming and washing the dishes. His wife does the cooking. They used to have a cat, but had to give it to the SPCA because he began physically abusing the cat. They also used to have a dog but he would get mad at the dog too and throw books at it.

Plaintiff described himself as generally healthy physically, but then went on to state that he smokes, is overweight, and feels like there is possibly something wrong with him. He smokes about twenty-five cigarettes per day. He is concerned he may have heart disease because at a recent physical, the physician's assistant felt his ankles and made a comment about obstruction of his veins. Other than the effects of his smoking, he has no other physical problems.

Plaintiff's plan is to try to get himself "straightened around" so that he can work because he figures if he can work, he could go back to college, get a bachelor's degree and then get an M.B.A. or Ph.D. He would like to go to Boston College and then go on to Yale or Princeton for graduate school. Plaintiff acknowledges that he probably will not get into Princeton or Yale, but he likes to aim for the very highest. (R. 31-61).

The ALJ next took testimony from a vocational expert (VE). The VE initially classified Plaintiff's past work as a cashier which is a light exertional job with an SVP of 3, a bagger which is medium exertional with an SVP of 2, sales attendant which is light with an SVP of 2, sales clerk which is light with an SVP of 3, and stock clerk which is heavy exertional with an SVP of 4. In pertinent part, the VE testified on a hypothetical question which assumed a person of Plaintiff's age, education and work history who has no exertional limits, who can follow simple instructions to complete simple tasks that are repetitive, with no more than frequent interaction with coworkers and supervisors; with any interaction with the public being brief, informational, and superficial, involving no decision making or judgment call authority. After clarification, the VE opined that such hypothetical individual could perform Plaintiff's past work. If the hypothetical is altered such that interaction with the general public is brief and superficial, the VE opined that the jobs of stock clerk and bagger would still be available. With the added limitation that the individual should only have occasional interaction with coworkers and supervisors, the VE testified that Plaintiff's past work would not be available, but that jobs of sandwich board carrier, cleaner/housekeeper, and kitchen helper/dishwasher would be available. However, if the job was further limited such that he must keep a very strict schedule as to when tasks are performed, all jobs would be eliminated except the sandwich board carrier.[1] And if the individual had difficulty getting along with others, including coworkers, supervisors, and the general public, such that his

---

[1] The VE testified that the sandwich board carrier position is considered light with an SVP of 1, of which there are 42,057 nationally and 2,492 statewide, but only 43% of those jobs are full-time. (R. 69).

5

interaction should be limited to less than occasional, there would be no jobs available. (R. 65-73).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are not set out herein in detail.

On June 3, 2010, the ALJ determined that while Plaintiff has severe impairments related to depression and personality disorder, he nonetheless had the residual functional capacity to perform a full range of work at all exertional levels, but with the nonexertional limitations that he can follow simple instructions to complete simple and repetitive tasks, but should have infrequent interaction with co-workers and supervisors, he should have brief informational, superficial interaction with the public, and with no decision making or judgment call authority. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform his past work of bagger and stock clerk as actually performed. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 12-22). The Appeals Council denied Plaintiff's request for review.

B.

Consideration of the Plaintiff's claims is governed by certain principles. In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C.

§ 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the

7

record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

Plaintiff initially complains that the ALJ's decision is not supported by substantial competent evidence where the VE testimony precluded employment based upon the residual functional capacity (RFC) found by the ALJ. The ALJ's RFC assessment included restrictions for *infrequent* interaction with co-workers and supervisors and brief informational, superficial interaction with the public. In response to a hypothetical which added the limitation that the individual have less than occasional interaction with others, including co-workers, supervisors and the general public, the VE opined that such limitation would eliminate all work. Thus, Plaintiff urges that it is unclear what the ALJ meant by "infrequent" in her RFC finding and, arguably, if use of the term "infrequent" means "less than occasional," then based upon the VE's testimony, there would be no competitive employment available. (Doc. 19 at 12-14).

In response, the Commissioner contends that "occasional" is defined in the Regulations as "occurring from very little up to one-third of the time." *See* SSR 83-10. By

the Commissioner's argument, this definition is consistent with "infrequent" which is defined by Oxford Dictionary as "not occurring often." Even if there was confusion in the terminology used, the VE identified other jobs (besides Plaintiff's past work) that the Plaintiff could do such as sandwich board carrier, housekeeper, or kitchen helper. Thus, the Commissioner urges the ALJ's error, if any, would be considered harmless, and a remand would serve no useful purpose. (Doc. 20 at 15-20).

By my consideration, the court need only address this issue. Because I find no substantial evidence to support the ALJ's vocational decision, the case is remanded for further consideration.

> As the decision reflects, the ALJ assessed the following RFC:
>
> [T]hat the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: the claimant could follow simple instructions to complete simple and repetitive tasks, but should have *infrequent* interaction with co-workers and supervisors. He should have brief informational, superficial interaction with the public, with no decision making or judgment call authority.

(R. 16) (emphasis added). The ALJ went on to conclude that, "[t]he claimant is capable of performing past relevant work as a bagger (DOT # 920.687-014) medium exertion with an SVP of 2 and stock clerk (DOT# 920.367.-014) heavy exertion with an SVP of 4." (R. 21). In so concluding, the ALJ noted that her decision was made with the assistance of VE testimony. Thus, she states:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually performed. The undersigned gave the vocation expert a hypothetical of an individual of the same age, education, work

9

> experience, and residual functional capacity as the claimant. The vocational
> expert testified that given all these factors such an individual would be able
> to perform his past work as a bagger and stock clerk.

(R. 21). However, as the transcript reveals, there is no hypothetical question corresponding to the RFC ultimately determined by the ALJ.[2] Nor is there other vocational support for the decision that Plaintiff was not disabled. While the ALJ sought to rely on the testimony of the VE from the hearing, such was offered on a hypothetical that assumed a different set of limitations. The following is the pertinent testimony by the VE:

> ALJ: Mr. Lesney, if you would assume for me a hypothetical individual with no exertional limits. Who can follow simple instructions to complete simple tasks that are repetitive. No more than frequent interaction with coworkers and supervisors. And any interaction with the public is brief, informational, and superficial. No decision making or judgment call authority given. With those limitations could such an hypothetical individual perform any of the prior work of the Claimant either as he performed it or as it is customarily performed?
>
> VE: No.
>
> ALJ: Any other work?
>
> VE: Yes.

---

[2]In this circuit, the ALJ is required to employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)). Although the decision here was made at step four, it was not improper for the ALJ to consider VE testimony in reaching her conclusion that Plaintiff could perform his past work. However, in so doing, the VE testimony must be based upon a hypothetical question which includes all of the Plaintiff's impairments. *See Hennes v. Comm'r of Soc. Sec.*, No. 04-13705, 2005 WL 1027242 (11th Cir. May 3, 2005). Here, it did not. Thus, where the ALJ relies upon VE testimony for decision, such must be supported by substantial evidence. *See Pendley*, 767 F.2d at 1562.

> ALJ: Why would it be no prior work?
>
> VE: Because we wanted less than frequent interaction with —
>
> ALJ: I said no more than frequent interaction with coworkers and supervisors. And interaction with the general public is brief, informational, or superficial interaction. No decision making or judgment call authority.
>
> VE: Okay, I'm sorry. I misunderstood then. Be okay with stock clerk, sales clerk, and bagger, and sales attendant. Be okay with all of them.

(R. 66-67).[3] The hypothetical posed to the VE, which is the hypothetical referred to by the ALJ for decision, references up to frequent interaction with co-workers and supervisors. In the context of social security cases, the term "frequent" means occurring from one-third to two-thirds of the time. *See, e.g.,* S.S.R. 83-10, 1983 WL 31251 (S.S.A.). I view this as quite different from the limitation for "infrequent" interaction with co-workers and supervisors as ultimately assessed by the ALJ. In short, the ALJ here relied expressly on the VE's testimony for her conclusion, and by my review such does not support the decision. Furthermore, given that the decision was made at step four and no mention is made in the decision of other work Plaintiff can perform, a remand is necessary.

The Commissioner contends that even if the use of the undefined term "infrequent" was error, such error would be harmless because the VE testified that there are other jobs in the local and national economy that the Plaintiff could perform. However, that approach was not the one employed by the ALJ for decision in this case. I am not at liberty to reach

---

[3]With the added limitation that the interaction with the public was only brief, superficial interaction, the VE opined the jobs of stock clerk and bagger were still available. (R. 68).

11

conclusions that were not made or are otherwise unsupported in the decision. *See Dial v. Comm'r of Soc. Sec.*, No. 10-11829, 2010 WL 4671270 (11th Cir. Nov. 18, 2010).

In sum, because the ALJ's decision is not supported by substantial evidence, remand is warranted. And, as Plaintiff's case is being remanded for further consideration on the grounds set forth above, the court need not address the remaining issues in detail. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised). However, I do note that the Plaintiff's challenge to the ALJ's credibility determination fails for lack of development. *See* (Doc. 14).[4] And as for Plaintiff's claim that the ALJ erred in discounting the opinions of Dr. William Sadowsky, M.D., it appears there is adequate support for the ALJ's rejection of the doctor's mental RFC opinion on the basis of lack of clinical findings and inconsistency with his own treatment records.[5]

D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards. The decision is reversed and remanded for

---

[4] The Court's Scheduling Order provides that any challenges to the ALJ's decision must be supported by citation to the record of the pertinent facts and by citations to the appropriate governing standards. "Any contention for which these requirements are not met is subject to being disregarded for insufficient development." (Doc. 14, ¶ 1).

[5] The mental impairment questionnaire Dr. Sadowsky completed, and which the ALJ rejected, includes no clinical findings to demonstrate the severity of Plaintiff's mental impairments and symptoms. (R. 505). There are minimal clinical findings referenced in the doctor's treatment records, and those that are, are notations on mental status, none of which appear to support the severe limitations set forth in the doctor's mental RFC. *Compare* (R. 505-08) *with* (R. 529-35).

further proceedings before the Commissioner consistent with this Order. Accordingly, the Clerk is directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 30th day of March 2012.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record